# UNITED STATES DISTRICT COURT
# FOR NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Sacred Holdings, Inc., <br>         Plaintiff, <br><br> v. <br><br> Sacred Leaf, L.L.C., et al., <br>         Defendants. | Case No: 1:19-cv-01939 <br><br> Honorable John F. Kness <br><br> Magistrate Judge M. David Weisman |

### DEFENDANT SACRED LEAF, L.L.C.'S MOTION TO SUPPLEMENT DEFENDANT'S MOTION FOR LEAVE TO AMEND ITS ANSWER TO ASSERT ITS NEWLY-DISCOVERED COUNTERCLAIMS

COMES NOW Defendant Sacred Leaf, L.L.C. ("Sacred Leaf"), by and through its undersigned attorneys, and hereby moves this Court for an Order permitting Defendant to supplement and amend its pending Motion for Leave to Amend its Answer to Assert Newly-Discovered Counterclaims. (Doc. No. 86.) On December 28, 2020, Sacred Leaf filed its Motion for Leave to Amend seeking to assert counterclaims. Sacred Leaf filed the Motion because through the course of discovery, it became aware that Plaintiff Sacred Holdings, Inc. ("Sacred Holdings") had not only undergone a rebranding – shifting away from the use of the registered SACRED MIND & BODY Mark upon which this action was filed – but had shifted its core business focus from the hemp oil market to the CBD market. Sacred Holdings' move to market its products as containing CBD post-dated the filing of this action and, as the facts have been developed through discovery, gives rise to the claim of infringement as alleged in Defendant's proposed Amended Answer and Counterclaim.

All factual assertions and legal arguments stated in Sacred Leaf's original Motion for Leave to Amend and subsequent briefing remain as stated therein. This Motion seeks permission from the Court to supplement the Motion for Leave to Amend with two additional affirmative defenses –

1

unlawful use in commerce and abandonment – based upon information learned in the January 27, 2021 deposition of Sacred Holdings' corporate representative.

1. **Sacred Holdings' unlawful use in commerce of the SACRED MIND & BODY Mark.**

The assertion that a mark has not been lawfully used in commerce by its owner is an affirmative defense to trademark infringement. See *Dessert Beauty, Inc. v. Fox*, 617 F.Supp.2d 185, 190-91 (S.D.N.Y. 2007) (holding, "the unlawful use defense – which has its origins in the common law doctrine of unclean hands – is a way of preventing the government from having to extend the benefits of trademark protection to a seller who violates [its] laws.") The unlawful use defense has long been recognized by the Trademark Trial and Appeal Board ("TTAB") and denotes a "policy of the PTO's TTAB [which holds] that use [of a mark] in commerce only creates trademark rights when the use is lawful." *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) (collecting TTAB cases that apply the defense). See also, James B. Astrachan, *Unlawful Use in Commerce and the Affirmative Defense to Infringement: When Trademark Rights Are Not What They Appear to Be*, 69 Syracuse L. Rev. 263, 287 (2019), observing:

> In its most basic sense, the unlawful use defense to trademark infringement alone does not dispute the defendant's use as alleged of the plaintiff's mark; rather, the defendant's affirmative defense to trademark infringement asserts that the trademark plaintiff, who claims the defendant has infringed its mark, has not acquired trademark rights due to its unlawful use in commerce of its mark, and as a result of its unlawful use, has no rights to enforce its mark against a junior user, or a would-be infringer. In other words, the defense asserts that regardless of the likelihood of confusion that may exist due to the defendant's use of a similar mark on similar goods or services, there is no infringement because the plaintiff does not have a protectable mark, and in essence, the defendant is the senior user of the mark and has superior rights, at least as between the two parties to the litigation. (Internal footnotes omitted).

Here, Sacred Holdings' claim of trademark infringement is defeated by its own unlawful use of the SACRED MIND & BODY Mark. Sacred Holdings' corporate representative, in her deposition, testified as follows:

2

> Q. Okay. Ms. Orizaba, this registration indicates that the first use is 12-1-2014. Is that correct?
>
> A. That's correct.
>
> Q. And the first use in commerce is the same date, 12-1-2014, correct?
>
> A. Correct.
>
> Q. Okay. What was the first use? What product -- which bath salt, which massage oil or personal lubricant did you begin selling with that product or that mark?
>
> A. I'm sorry, can you repeat that?
>
> Q. Sure. Back in December 1st of 2014, which product did you sell that contained that Sacred Mind & Body mark?
>
> A. The lavender Epsom salt, massage oil, lubricant and a pain lotion in California, San Francisco.
>
> Q. And all those products contained THC?
>
> A. Yes.
>
> (Orizaba Deposition, 1/27/21, ¶ 65:9-24).

Sacred Holdings' corporate representative further testified:

> Q. Okay. In 2015, when you applied for this mark, did you sell only products that contained THC?
>
> A. Yes.
>
> Q. At some point in time you began to sell products that did not contain THC. Is that correct?
>
> A. That's correct.
>
> Q. When did you start selling products that did not contain THC under this mark?
>
> A. I believe at the end of 2016.
>
> Q. Why did you decide to sell products that did not contain THC at the end of 2016?
>
> A. Under the same grounds, going nationally and providing -- bringing the product to more consumers.

3

> Q. That makes sense to me, Ms. Orizaba. Did you continue to sell the products that contained THC in California?
>
> A. The sale of the THC in California stopped in end of 20 -- the end of 2017 because the laws changed in California. So then we -- we just discontinued to stop in California in 20 – I believe, I don't remember exact time, but the end of 2017.
>
> Q. Did you sell any products that contained CBD at that time at the end of 2017?
>
> A. We were in the process of producing product with CBD, hemp.
>
> Q. And that's understandable, but my question was did you sell products that contained CBD at the end of 2017 under this mark?
>
> A. We did -- we did but not like national presence, most in the local, local consumers.
>
> Q. Okay.
>
> (Orizaba Deposition, 1/27/21, Pgs. 45:14 – 46:23).

Of course, marijuana remains a Schedule I controlled substance under the federal Controlled Substances Act ("CSA"), and state legislation decriminalizing marijuana has no effect on that status. See, e.g., *Gonzales v. Raich*, 545 U.S. 1, 29 (2004). The 2018 Farm Bill, signed into law on December 20, 2018, exempted "hemp" – cannabis and cannabis derivatives containing very low levels of tetrahydrocannabinol (THC) – from control under the CSA. See 21 U.S.C. § 802(16)(B)(i). Accordingly, some CBD products that meet those requirements are no longer a federally controlled substance. Prior to the passage of the Farm Bill, in April 2018, the Illinois General Assembly passed Bill SB2772 (the Low THC Hemp Extract Act), allowing the sale of low THC hemp extract products, named products that contained CBD.

By its own admissions, Sacred Holdings was unlawfully marketing and selling products under the SACRED MIND & BODY Mark that contained THC – in violation of the Controlled Substances Act – until at least the end of 2016. Further, Sacred Holdings admits to unlawful use in commerce of its SACRED MIND & BODY Mark by selling CBD containing products prior to the passage of

federal or state legislation that permitted the sale of products containing CBD. Consequently, Sacred Holdings has not acquired valid trademark rights due to its unlawful use in commerce of its SACRED MIND & BODY Mark, and because of its unlawful use, has no rights to enforce its mark against Sacred Leaf or any of the Defendants.

Based on the foregoing, Sacred Leaf respectfully requests the Court grant leave to amend its Answer to assert the affirmative defense of Sacred Holdings' unlawful use.

2. **Sacred Holdings' potential abandonment of the SACRED MIND & BODY Mark.**

If an owner of a mark abandons it, the mark, "returns to the public domain, and may be appropriated anew." *Specht v. Google Inc.*, 747 F.3d 929, 935 (7th Cir. 2014); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954–55 (7th Cir. 1992) ("Because trademark rights derive from the use of a mark in commerce…, the owner of a mark will lose his exclusive rights if he fails to actually use it."). "A trademark is abandoned if its 'use in commerce' has been discontinued with no intent to resume its use." *Specht*, 747 F.3d at 934; 15 U.S.C. § 1127. "Intent not to resume may be inferred from the circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127.

Here, it is undisputed that after the initiation of this action, Sacred Holdings unveiled a major rebranding initiative – labelling all its products and retooling all its websites and social media platforms with its unregistered marks, which are both comprised of the term "SACRED" accompanied by a stylized leaf (the irony and impropriety of which has not been lost on Sacred Leaf). The question is whether Sacred Holdings' rebranding constitutes abandonment of the SACRED MIND & BODY Mark under the law?

When asked about Sacred Holdings' current use in commerce of the SACRED MIND & BODY Mark, its corporate representative testified as follows:

> Q. Okay. Is there any difference in the product that contains – that's displayed with the old mark versus the product that's displayed with the new mark?
>
> A. It's the same product.
>
> Q. Same product. But you're not actively using the old mark anymore?
>
> A. Correct.

(Orizaba Deposition, 1/27/21, Pgs. 71:11-18).

Admittedly, after a break and a chance to consult with her attorneys, Sacred Holdings' corporate representative recanted her testimony that Sacred Holdings had abandoned the SACRED MIND & BODY Mark. However, the evidence in the record and that produced by Sacred Holdings' third-party consultants, advisors, and vendors, appears to confirm Sacred Holdings has indeed abandoned its use in commerce of the SACRED MIND & BODY Mark. At minimum, there are questions of fact and credibility that should be decided by the jury.

3. **Consultation with Plaintiff's Counsel and Proposed Briefing Schedule.**

Counsel for Sacred Leaf notified counsel for Sacred Holdings of Sacred Leaf's intent to file this Motion. Sacred Holdings has indicated it will oppose this Motion. Pursuant to the Rules established by this Court, counsel for all parties have conferred and agreed to the following proposed briefing schedule:

    a. Any Response to this Motion must be filed by **May 5, 2021**; and

    b. Any Reply to any Response to this Motion must be filed by **May 19, 2021.**

WHEREFORE, Sacred Leaf respectfully requests the Court permit Sacred Leaf to supplement its Motion for Leave to Assert Newly Discovered Counterclaims with the above-stated affirmative defenses discovered after briefing was completed by the parties.

Respectfully submitted,

**FAGAN & EMERT, L.L.C.**

/s/ Mark T. Emert
Mark T. Emert
Kansas Bar No. 22186
Jason B. Prier
Kansas Bar No. 21921
730 New Hampshire, Suite 210
Lawrence, Kansas 66044
(785) 331-0300 - Telephone
(785) 331-0303 - Facsimile
memert@faganemert.com
jprier@faganemert.com
Admitted Pro Hac Vice

And

Steven L. Wiser
steve@thorelli.com
Illinois Bar. No. 6244922
Nathaniel T. Cutler, Esq.
Nathaniel@thorelli.com
Illinois Bar No. 6295591
THORELLI & ASSOCIATES
70 West Madison Street, Suite 5750
Chicago, Illinois 60602
Tel: (312) 357-0300
Fax: (312) 357-0328
*Attorneys for Defendant,*
*SACRED LEAF, L.L.C.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 21st day of April 2021, a true and correct copy of the above and foregoing was filed with the Court via the ECF filing system, with delivery of a copy via electronic mail upon the following:

Marcus Stephen Harris – ARDC No. 6269909
Jeffrey Kuo – ARDC No. 6324204
TAFT STETINIUS & HOLLISTER LLP
111 East Wacker, Suite 2800
Chicago, IL 60601
(312) 840-4320
mharris@taftlaw.com
jkuo@taftlaw.com
Attorneys for Sacred Holdings, Inc.

/s/ Mark T. Emert
Mark T. Emert